IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 2 8 2011
CLERK, U.S. DISTRICT COURT
by _____
Deputy

| | | |
|---|---|---|
| MONARCH BAY CAPITAL GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:11-CV-463-A |
| | § | |
| HIGHLINE TECHNICAL INNOVATIONS, INC., F/K/A/ SYSTEMS EVOLUTIONS, INC., | § § § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION
### and
### ORDER

Came on for consideration the motion of defendant, Highline Technical Innovations, Inc. f/k/a Systems Evolutions, Inc., to dismiss or stay proceedings. Having now considered the motion, the response thereto of plaintiff, Monarch Bay Capital Group, LLC, the record, and applicable authorities, the court concludes that defendant's motion should be denied.

### I.

### Background

Plaintiff initiated the instant action by the filing on July 6, 2011, of its original complaint, and, upon the court's order, filing its first amended complaint on July 14, 2011.

The first amended complaint makes the following factual

allegations:

In or around 2007, defendant's predecessor in interest, Systems Evolution, Inc. ("SEVI"), was in default on its obligations to various creditors. In February 2007, SEVI hired plaintiff's principal, David Walters ("Walters"), as chief executive officer to help stabilize its cash flow and grow its business. SEVI also engaged plaintiff to provide accounting and financial advice. In consideration for these consulting services, plaintiff received approximately 453,000,000 shares of common stock in SEVI.

Sometime in 2008 SEVI's senior secured creditor, NIR, to which SEVI was in default, approached Walters about merging SEVI with a company known as Dealer Advance, Inc., in order to continue funding SEVI. The transaction required plaintiff to sell its stock in SEVI, and SEVI ultimately acquired the assets of Dealer Advance. The SEVI-Dealer Advance transaction documents contemplated that plaintiff would sell all of its stock for the total amount of $60,000, comprised of $10,000 in cash and the remaining $50,000 in the form of a convertible promissory note issued by SEVI to plaintiff as holder. Contemporaneous with the SEVI-Dealer Advance transaction, SEVI also issued to plaintiff a second convertible promissory note in the amount of $80,000, in exchange for then-unpaid past-due consulting fees.

Following the SEVI-Dealer Advance transaction, plaintiff ceased its involvement with SEVI other than as a holder of the aforementioned promissory notes. In 2010, SEVI merged with defendant, with defendant becoming the parent company of SEVI.

Pursuant to a provision in the promissory note, plaintiff on October 6, 2010, issued notice to defendant to convert the first promissory note into defendant's common stock, and issued a similar conversion notice on June 20, 2011, as to the second promissory note. Plaintiff failed or refused to respond to either notice. Although both promissory notes matured on December 31, 2010, defendant paid nothing on either note.

As a result of defendant's alleged defaults, plaintiff brought a claim against it for breach of the promissory notes, as well as for a declaratory judgment as to the parties' rights and obligations with regard to the notes.

B. <u>The New York State Court Action.</u>

On April 21, 2010, a suit was filed in the state court of New York ("New York Suit"), naming as plaintiffs New Millennium Capital Partners III, New Millennium Capital Partners II, AJW Partners, LLC, AJW Offshore, LTD, AJW Qualified Partners, LLC, AJW Master Fund, LTD, AJW Partners, LLC, AJW Offshore II, LTD, AJW Qualified Partners II, LLC, and AJW Master Fund II, LTD, identified collectively in the motion as "N.I.R. Group," and

3

naming Systems Evolution, Inc., predecessor to the defendant in the instant action, as defendant. On January 7, 2011, defendant filed counterclaims against the N.I.R. Group plaintiffs, and also added third-party defendants Corey Ribotsky ("Ribotsky"), N.I.R. Group, LLC, Steven Humphries ("Humphries"), Cabal Communications Corporation f/k/a Dealer Advance, Inc., STI Group, Inc., Walters, and Monarch Bay, plaintiff in the instant action.[1]

As described by defendant in the motion, the "counterclaim and third-party complaint alleged that the plaintiffs and the third-party defendants conspired together and acted in concert to defraud and injure Systems Evolution, its shareholders, and the market as a whole." Mot. to Dismiss at 5. The counterclaims and third-party claims alleged:

The N.I.R. Group, at Ribotsky's direction, invested in "penny-stock companies," id., whose managers were loyal to N.I.R. Group rather than the companies' shareholders, and thus effectively controlled those companies. With the assistance of the managers, N.I.R. Group made investments that were extremely favorable to it but unfavorable to the controlled companies and their shareholders. The investments were made in the form of

---

[1] For clarity, the court will refer to plaintiff as "Monarch Bay" only in this subsection describing the New York Suit.

convertible notes that paid high interest and also could be converted into the companies' common stock, at N.I.R. Group's option, at a conversion rate that was a fraction of the stock's trading price. The managers also shared inside information with N.I.R. Group and Ribotsky.

Following the investments, the managers of the companies, at Ribotsky's knowledge and direction, took steps intended to increase the stock prices so that N.I.R. Group could convert its investments into stock and sell that stock at a profit. Ribotsky and Humphries then endeavored to use the penny-stock "shells" to acquire other small or start-up companies in order to drive up the shell company's liquidity and stock price, thus allowing N.I.R. Group to sell its stock at a profit. One such company in which N.I.R. Group invested was Dealer Advance. N.I.R. Group also invested in companies managed by Walters, including Systems Evolution and STI Group, Inc.

In or about December 2008, Humphries and Walters, with N.I.R. Group and Ribotsky's approval, knowledge, and financial backing, caused Systems Evolution, Dealer Advance, and STI Group to engage in a series of sham transactions whereby Systems Evolution assumed a majority of Dealer Advance's debt to the N.I.R. Funds, while STI Group assumed System Evolution's debt to the N.I.R. Funds. However, Humphries, with knowledge and consent

of N.I.R. Group and Ribotsky, not only made affirmative misrepresentations, but also failed to disclose material facts, including some pertaining to the December 2008 transactions. Humphries also allegedly falsified documents and forged signatures in order to affect the unauthorized issuance of Systems Evolution's stock. As part of their scheme, around December 2008 Ribotsky, Humphries, and Walters and their companies engaged in a series of purportedly sham transactions that saddled Systems Evolution with millions of dollars in debt in return for essentially worthless assets.

Around December 31, 2008, Monarch Bay also allegedly transferred more than 453,000,000 shares of Systems Evolution stock to Humphries in exchange for $10,000 cash and a convertible promissory note issued by Systems Evolution in the amount of $50,000, and around the same time Systems Evolution also issued a convertible note to Monarch Bay with a face value of $80,000, in exchange for Monarch Bay and related entities releasing Systems Evolution from payment of accrued compensation and other fees.

The remainder of the fifty-eight paragraphs containing factual allegations in support of the counterclaims and third-party claims describe various purportedly sham transactions between and among the parties to the counterclaims and third-party claims.

Defendant asserted ten counterclaims in the New York Suit, including, as to Monarch Bay, claims of fraud relating to the December 2008 transactions, aiding and abetting Humphries's breach of fiduciary duty, and aiding and abetting Walters's breach of fiduciary duty. Defendant prayed for relief in the form of dismissal of the complaint against it and judgment in its favor, rescission of the "contracts relating to the sham transactions conducted in December 2008," Mot. to Dismiss, Ex. A at 35, and compensatory and punitive damages.

## II.

### Analysis

Defendant contends that the court should abstain from hearing this action pursuant to the doctrine set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).[3] Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction afforded them. Colo. River, 424 U.S. at 817. However, under Colorado River, the court may abstain from a case when it is part of parallel proceedings pending in federal and state court. Brown v. Pacific Life Ins.

---

[3]Defendant also refers to abstention under Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942). However, in cases involving coercive relief, including, as here, damages for breach of contract, the court must analyze defendant's request for abstention under the standards set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Southwind Aviation, Inc. v. Bergen Aviation, Inc., 23 F.3d 948, 951 (5th Cir. 1994).

Co., 462 F.3d 384, 395 n.7 (5th Cir. 2006) (citing RepublicBank Dallas, Nat'l Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir. 1987)) (per curiam)).

Abstention is typically appropriate only under "exceptional circumstances." Kelly Inv., Inc. v. Cont'l Common Corp., 315 F.3d 494, 497 (5th Cir. 2002). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colo. River, 424 U.S. at 813. The court considers the following six factors in determining whether "exceptional circumstances" exist that would require abstention:

> 1) assumption by either court of jurisdiction over a res, 2) relative inconvenience of the forums, 3) avoidance of piecemeal litigation, 4) the order in which jurisdiction was obtained by the concurrent forums, 5) to what extent federal law provides the rules of decision on the merits, and 6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

Stewart v. Western Heritage Ins. Co., 438 F.3d 488, 491 (5th Cir. 2006) (citing Kelly Inv., Inc., 315 F.3d at 497). See also Brown, 462 F.3d at 395 (citing Colo. River, 424 U.S. at 818).[3]

"[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical

---

[3] "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). Even where a federal and state court case are truly parallel, "only the clearest of justifications will warrant the federal court's staying its hand." McIntosh, 828 F.2d at 1121 (quoting Colorado River, 424 U.S. at 819).

A. The Two Actions are Not Parallel.

Before the question of abstention can be considered, the court must determine whether the state and federal actions are parallel. See, e.g., Diamond Offshore Co. v. A&B Builders, Inc., 302 F.3d 531, 540 (5th Cir. 2002), overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778 (5th Cir. 2009). While "suits are parallel if they involv[e] the same parties and the same issues[,]" the United States Court of Appeals for the Fifth Circuit has recognized that "it may be that there need not be applied in every instance a mincing insistence on precise identity of parties and issues . . . ." McIntosh, 828 F.2d at 1121.

Even considering the Fifth Circuit's caution against requiring "precise identity of parties and issues," the court finds it difficult to conclude that the instant action and the

9

New York Suit are parallel. The instant action pertains to two promissory notes issued by defendant to plaintiff. The New York Suit, in contrast, involves sixteen other defendants in addition to defendant's predecessor, involves numerous other issues other than those now before the court, and asserts ten counterclaims and causes of action, only three of which involve plaintiff. Under these circumstances, the instant action and the New York Suit do not appear to be parallel. See, e.g., id. (state and federal court cases not parallel, where general subject matter and validity of promissory note were common issues but remaining issues were disparate, and additional parties were named in the federal case that were not named in state case).

Even if the court were to find that the instant action and the New York Suit are parallel, after consideration of the Colorado River factors discussed below, the court concludes that exceptional circumstances of the type contemplated by Colorado River are not present so as to warrant the court's abstention.

B.   Exceptional Circumstances.

  1.   Assumption of Jurisdiction over a Res.

The parties agree that neither court has assumed jurisdiction over a res or other property. Both parties imply that this renders the first factor neutral. The Fifth Circuit, on the other hand, has explicitly "rejected the contention that

10

the absence of this factor is a neutral item, of no weight in the scales. . . . This factor supports exercising federal jurisdiction." Stewart, 438 F.3d at 492 (quotation marks and citation omitted). See also Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 738 (5th Cir. 1999) ("[T]he absence of this first factor weighs against abstention.")[4]

2.  Relative Inconvenience of the Forums.

Considerations relative to this factor include "the relative locations of the forums, the location of evidence or witnesses, or the availability of compulsory process." Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1191 (5th Cir. 1988). The question for the court is whether there is "any contention that the federal forum was any less convenient to the parties than the state forum." Id. at 1192 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 19). Defendant does not clearly argue whether this factor weighs in favor of or against abstention.

Plaintiff is a citizen of California, while defendant is a citizen of Arkansas. Thus, neither party is a citizen of either Texas or New York. Plaintiff contends that its evidence is either in California or at its attorneys' offices in New York or

---

[4] There may have been some confusion as to the effect of this factor prior to the Fifth Circuit's holding in Stewart; however, Stewart makes quite clear that "[t]he first factor, therefore, is relevant even if no res exists in the case." Stewart v. Western Heritage Ins. Co., 438 F.3d 488, 492 n.4 (5th Cir. 2006).

Texas, and presumes that defendant's evidence is at its principal place of business in Arkansas or likewise at its attorneys' offices in New York or Texas. Plaintiff alleges that the witnesses are located in California and Arkansas, with one witness incarcerated in Florida.

The court finds no contention by defendant that the federal forum in Texas is any less convenient to the parties than the state forum in New York. It in fact appears to the court that the federal forum is neither more nor less convenient than the state forum. This factor weighs against abstention.

Bolstering this conclusion is language in the promissory notes whereby the parties agreed that jurisdiction over issues pertaining to the notes would lie in "the United States Federal Courts located in Ft. Worth, Texas," and also "irrevocably waive[d] the defense of an inconvenient forum." Pl.'s First Am. Original Compl., Ex. A at 9, Ex. B at 9. Forum-selection clauses are presumptively valid and may be overcome only be a clear showing that the clause is "unreasonable under the circumstances." Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 35 (5th Cir. 1997) (per curiam). Defendant did not allege that the forum-selection clauses were unreasonable or invalid.[6]

---

[6]Defendant argues only that if the promissory notes are at some point invalidated due to fraud,
(continued...)

Accordingly, the court concludes that the inconvenience factor weighs against abstention.

3.  <u>Avoidance of Piecemeal Litigation.</u>

In connection with this factor, "[t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination." <u>Black Sea Inv., Ltd. v. United Heritage Corp.</u>, 204 F.3d 647, 650 (5th Cir. 2000) (alteration in original) (citation omitted). Rather, the court's concern is the prevention of "<u>piecemeal</u> litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." <u>Id.</u> at 650-51 (emphasis in original). When, as here, no court has assumed jurisdiction over a disputed res, no such danger exists. <u>Id.</u> at 651; <u>Evanston</u>, 844 F.2d 1192. This factor weighs against abstention.

Further, to the extent defendant's concern centers around the possibility of inconsistent judgments, the Fifth Circuit has recognized that such can be avoided through a plea of <u>res judicata</u> should one court render judgment before the other. <u>Kelly Inv., Inc.</u>, 315 F.3d at 498; <u>Evanston</u>, 844 F.2d at 1192.

4.  <u>The Order in Which Jurisdiction was Obtained.</u>

Under the fourth factor, "priority should not be measured

---

[6](...continued)
the choice of forum clause would likewise be invalid.

exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Black Sea Inv., Ltd., 204 F.3d at 651 (brackets omitted) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 21). Defendant argues that this factor weighs in favor of abstention inasmuch as the New York Suit was filed more than a year ago, prior to the filing by plaintiff in July 2011 of the instant action, and that a "great deal of discovery has been accomplished." Mot. to Dismiss at 26. In contrast, the instant action has not proceeded beyond the filing of plaintiff's first amended complaint and the motion to dismiss.

Plaintiff counters, however, that the third-party claims in the New York Suit were not filed until January 2011, and those claims, including the ones against it as a third-party defendant, were stayed on May 3, 2011, and remain so. Plaintiff also claims it did not answer the New York Suit until June 2011, and that it has not been involved in any discovery in that case. Defendant does not dispute plaintiff's assertions.

The Supreme Court has indicated that when proceedings in federal court have not progressed beyond the filing of the original complaint, abstention is favored. Colorado River, 424 U.S. at 820. However, where neither the state nor federal case has progressed past the pleading stage, the balance tips against

14

abstention and in favor of federal court jurisdiction. <u>See</u>, e.g., <u>Black Sea Inv., Ltd.</u>, 204 F.3d at 651; <u>Murphy</u>, 168 F.3d at 738-39. Because it appears that little progress has been made in either the instant action or the New York Suit, this factor weighs against abstention.

5. <u>The Extent Federal Law Governs the Case.</u>

The parties agree that state law governs the issues in the instant action and that no federal issues are present. However, "the presence of state law issues weighs in favor of surrender only in rare circumstances." <u>Evanston</u>, 844 F.2d at 1193 (quoting <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 26). The court's task is not to find a substantial reason to exercise its jurisdiction, but rather to determine if "exceptional circumstances" justify surrender of that jurisdiction. <u>Black Sea Inv., Ltd.</u>, 204 F.3d at 651. Because defendant has not shown that such rare or exceptional circumstances exist in this action, "this factor is at most neutral." <u>Stewart</u>, 438 F.3d at 493 (quotation marks and internal citations omitted).

6. <u>Adequacy of State Proceedings.</u>

"The sixth factor is either a neutral factor or one that weighs against abstention." <u>Id.</u> There appears to be no indication from the parties that the state court could not adequately protect the parties' interests, rendering this factor

neutral.

* * * *

The court concludes that consideration of the <u>Colorado River</u> factors fails to reveal the "exceptional circumstances" required for the court to abstain from jurisdiction in the instant action.

### III.

### Order

Therefore,

The court ORDERS that defendant's motion to dismiss or stay proceedings be, and is hereby, denied.

SIGNED December 28, 2011.

_____
JOHN McBRYDE
United States District Judge